298 S.E.2d 467

**Myrtle M. HARVEY**

v.

**Cesco HARVEY, Jr.**

No. 15489.

Supreme Court of Appeals of West Virginia.

Dec. 3, 1982.

Masters & Taylor, Barbara J. Keefer and Robert A. Taylor, Charleston, for appellant.

John E. Dorsey, Charleston, for appellee.

McHUGH, Justice:

This action is before this Court upon an appeal by the appellant, Myrtle M. Harvey, from the final order of the Circuit Court of Kanawha County, West Virginia. Pursuant to that order, entered on October 23, 1981, the circuit court granted the appellee, Cesco Harvey, Jr., an annulment of his marriage to the appellant. Furthermore, pursuant to that order, the circuit court denied the appellant's claim for separate maintenance.

This Court by order entered on February 10, 1982, granted the appeal in this action. By order entered on April 29, 1982, this Court granted the appellant's motion for leave to move to reverse. This Court has before it all matters of record and the briefs and argument of counsel.

### Appellant's First Marriage

The record indicates that on April 14, 1950, in Kanawha County, West Virginia, the appellant married Vance Bernard Pauley (hereinafter "Pauley"). At that time, however, Pauley was married to another woman by the name of Patricia Fletcher. Pursuant to *W. Va. Code*, 61–8–1 [1931],[1] Pauley was indicted in the Intermediate Court of Kanawha County for the felony offense of bigamy.[2] Pauley entered a plea of guilty to that charge and on May 15, 1952, was sentenced to the West Virginia Penitentiary for an indeterminate term of one to five years.

The appellant asserts that at the time Pauley was sentenced in Intermediate Court, the trial judge informed Pauley, in the presence of the appellant, that Pauley's marriage to the appellant was annulled. In September, 1980, the appellant instituted an action to annul her marriage to Pauley. Prior to that time, however, neither the appellant nor Pauley took any action to terminate the marriage, although in the action before this Court the appellant asked that her marriage to Pauley be declared void. The appellant asserts that, because of the prosecution of Pauley for bigamy, she believed that her marriage to Pauley had been terminated.

### Appellant's Second Marriage

In 1955 the appellant began living with the appellee, Cesco Harvey, Jr. The parties had one child by the name of Patricia Carol Harvey. That child was born in 1955 and was emancipated during the period in question. The appellant and the appellee were married on October 5, 1961, in Boyd County, Kentucky.

The appellee and the appellant lived together as man and wife in West Virginia until March, 1979. The appellant asserts,

1. *W. Va. Code*, 61–8–1 [1931], provides as follows:

   Any person, being married, who, during the life of the former husband or wife, shall marry another person in this State, or, if the marriage with such other person take place out of this State, shall thereafter cohabit with such other person in this State, shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than five years.

2. The Intermediate Court of Kanawha County was redesignated "Circuit Court of Kanawha County" pursuant to the "Judicial Reorganization Amendment" to the Constitution of West Virginia. That amendment was ratified on November 5, 1974.

*inter alia,* that at that time she was abandoned by the appellee.

## Procedural History

In 1979 the appellant in the Circuit Court of Kanawha County, West Virginia, instituted an action against the appellee for separate maintenance. That action was brought by the appellant pursuant to *W. Va. Code,* 48–2–28 [1969].[3] In her amended complaint, the appellant further asked the circuit court to declare the marriage between the appellant and Vance Bernard Pauley void.

The appellee's answer and counterclaim asserted that the marriage of the appellant to Pauley had not been dissolved by divorce, annulment or other proceeding and that, therefore, the marriage between the appellant and the appellee was bigamous. In that answer and counterclaim, the appellee asked the circuit court to declare his marriage to the appellee null and void, pursuant to *W. Va. Code,* 48–2–1 [1935]. In the alternative, the appellee sought a divorce from the appellant.

The circuit court ordered the appellee to pay the appellant the sum of $200.00 per month *pendente lite.* The circuit court further ordered the action referred to a commissioner.

Subsequent to the taking of evidence, the commissioner recommended to the circuit court that the marriage between the appellant and the appellee be deemed null and void and that an annulment decree be entered. Specifically, the commissioner concluded: (1) that the marriage between the appellant and the appellee was void pursuant to Kentucky law, (2) that a current annulment of the appellant's marriage to Pauley would not retroactively validate her marriage to the appellee, (3) that Pauley's conviction for bigamy did not constitute an annulment of Pauley's marriage to the appellant and (4) that the appellant was not entitled to separate maintenance or alimony from the appellee.

By final order entered on October 23, 1981, the circuit court confirmed and adopted the report of the commissioner and annulled the marriage between the appellant and the appellee. Referring to the appellant's marriage to Vance Bernard Pauley, the circuit court in that order stated as follows: "It is equally clear under West Virginia Code § 48–2–1, as amended, that a conviction for bigamy under West Virginia Code § 61–8–1, as amended, is not sufficient to act as a judgment order of nullity...."

In this appeal, the appellant contends that her 1961 marriage to the appellee was valid, and thus, the appellant is entitled to pursue her claim against the appellee for separate maintenance. In support of that contention the appellant asserts that the 1952 conviction of Vance Bernard Pauley for the offense of bigamy operated as a judicial determination at that time annul-

---

3. *W. Va. Code,* 48–2–28 [1969], was amended in 1981. *W. Va. Code,* 48–2–28 [1969], provided as follows:

Whenever a husband shall, without good and sufficient cause, have failed to provide suitable support for his wife, or have abandoned or deserted her, or if the wife shall have grounds for divorce, the court of any county that would have jurisdiction of an action for divorce between the parties, shall, at the action of the wife, whether or not a divorce be prayed for, order to the wife as alimony and separate maintenance such sum out of the husband's earnings or income as the court may determine, considering the circumstances of the parties and their stations in life, and may prohibit the husband from imposing any restraint on her personal liberty, and may free her real and personal property from possession, control or any interest of the husband; and during the pendency of the action the court shall have the same powers to make such orders as are provided for actions for divorce by section thirteen of this article insofar as the same are applicable on behalf of the wife. Any order entered in the case shall be effective during such time as the court shall by its order direct, or until the further order of the court thereon, and upon the petition of either party, the court may, from time to time afterwards, revise or alter such order, or make further orders, concerning the maintenance of the wife and the interest of the husband in the property of the wife, and the care, custody, education and maintenance of the minor children of the parties, and may determine with which of their parents the children or any of them shall remain.

The 1981 amendment to *W. Va. Code,* 48–2–28, substituted references to spouses for references to husbands and wives.

ling the appellant's marriage to Pauley, and, thus, appellant was free to marry the appellee in 1961. In the alternative, the appellant asserts that she is entitled to an order to be entered *nunc pro tunc* annulling her 1950 marriage to Vance Bernard Pauley, thereby retroactively validating her 1961 marriage to the appellee.

In response, the appellee contends that the appellant's marriage to Vance Bernard Pauley was not annulled in 1952 and that the appellant's marriage to Vance Bernard Pauley may not be annulled retroactively. The appellee asserts primarily that in 1952 the Intermediate Court of Kanawha County made no attempt to annul the marriage of the appellant to Vance Bernard Pauley. The appellee contends that in any event, inasmuch as the jurisdiction of the Intermediate Court of Kanawha County in 1952 was limited to criminal matters, that court had no authority to annul the marriage of the appellant to Vance Bernard Pauley. Furthermore, the appellee contends that the Circuit Court of Kanawha County lacked jurisdiction to award the appellant temporary support from the appellee pending the appeal to this Court.

■ Pursuant to *W. Va. Code*, 48-2-1 [1935], and *W. Va. Code*, 48-2-2 [1931], a marriage may be annulled upon the ground of bigamy.[4] In contrast to common law and the statutory law of Virginia,[5] bigamous marriages in West Virginia are, pursuant to *W. Va. Code*, 48-2-1 [1935], voida-

ble, rather than void *ab initio*. *W. Va. Code*, 48-2-1 [1935], provides as follows:[6]

[A]ll marriages which are prohibited by law on account of either of the parties having a former wife or husband then living; all marriages which are prohibited by law on account of consanguinity or affinity between the parties; all marriages solemnized when either of the parties was an insane person, feeble-minded person, idiot, imbecile, ... or was afflicted with a venereal disease, or was incapable, because of natural or incurable impotency of body, of entering into the marriage state, or was under the age of consent; all marriages solemnized when either of the parties, prior to the marriage, without the knowledge of the other, had been convicted an infamous offense, or when, at the time of marriage, the wife, without the knowledge of the husband, was with child by some person other than the husband, or prior to such marriage had been, without the knowledge of the husband, notoriously a prostitute, or when, prior to such marriage the husband, without the knowledge of the wife, had been notoriously a licentious person, shall be void from the time they are so declared by a decree of nullity.

The appellant's 1950 marriage to Vance Bernard Pauley was, thus, voidable pursuant to *W. Va. Code*, 48-2-1 [1935], upon the ground that Pauley had a former wife then living. Accordingly, the appellant's 1961

4. In *Black's Law Dictionary* 148 (5th ed. 1979), *bigamy* is defined, in part, as follows:

The criminal offense of willfully and knowingly contracting a second marriage (or going through the form of a second marriage) while the first marriage, to the knowledge of the offender, is still subsisting and undissolved. The state of a man who has two wives, or of a woman who has two husbands, living at the same time.

5. Ch. 109, § 1, of the 1849 and 1860 *Va. Codes* provided, in part, as follows: "[A]ll marriages which are prohibited by law on account of the parties having a former wife or husband then living, shall be absolutely void, without any decree of divorce, or other legal process."

Similarly, *Va. Code*, § 20-43 (1919), presently in effect, provides as follows: "Bigamous marriages void without decree.—All marriages

which are prohibited by law on account of either of the parties having a former wife or husband then living shall be absolutely void, without any decree of divorce, or other legal process."

6. Ch. 64, § 1, of the 1868 *W. Va. Code* provided, in part, as follows: "[A]ll marriages which are prohibited by law on account of either of the parties having a former wife or husband then living ... shall, if solemnized within this state, be void from the time they are so declared by a decree of divorce or nullity."

*W. Va. Code*, 48-2-1 [1935], was amended in 1969 and currently provides that "[a]ll marriages which are prohibited by law on account of either of the parties having a former wife or husband then living ... are voidable and shall be void from the time they are so declared by a judgment order of nullity."

marriage to the appellee was void pursuant to Kentucky law, unless the appellant's marriage to Pauley had, pursuant to *W.Va. Code*, 48–2–1 [1935], been declared void by a decree of nullity.[7]

Neither the appellant nor Pauley having attempted to terminate their 1950 marriage prior to the appellant's 1961 marriage to the appellee, this Court must consider whether the appellant's marriage to Pauley was annulled or declared a nullity by the Intermediate Court of Kanawha County in 1952 when Pauley was convicted in that court of the offense of bigamy.

Upon a careful examination of the record, this Court is of the opinion that the Intermediate Court of Kanawha County in 1952 did not annul or nullify the appellant's marriage to Pauley. Even though the appellant asserts that during Pauley's sentencing the trial judge stated that the appellant's marriage to Pauley was annulled, no order annulling or nullifying that marriage was ever entered by the Intermediate Court or by any other court prior to the appellant's marriage to the appellee.

In syllabus point 3 of *Meyers v. Washington Heights Land Company*, 107 W.Va. 632, 149 S.E. 819 (1929), this Court held as follows: "Courts of record must speak by their records. What is not thereby made to appear does not exist in law." That a court of record speaks only through its records or orders has been generally affirmed by this Court in subsequent cases. *See State ex rel. Browning v. Oakley*, 157 W.Va. 136, 138, 199 S.E.2d 752, 753 (1973), and cases cited therein.[8]

However, the appellant asserts that the 1952 conviction of Vance Bernard Pauley for the offense of bigamy operated as a judicial determination at that time annulling the appellant's marriage to Pauley, and, thus, the appellant was free to marry the appellee in 1961. Such an issue was discussed by this Court, but not resolved, in *Sledd v. State Compensation Commissioner*, 111 W.Va. 509, 163 S.E. 12 (1932).

In *Sledd*, a widow married John Slade in 1921 but separated from him in 1923 when she discovered that John Slade was already married to another woman. The widow's marriage to Slade was never annulled. In 1924 the widow married James Sledd who was killed in 1930 as a result of his employment. The widow sought workmen's compensation benefits for the death of her second husband, James Sledd.

In that action the commissioner asserted that the widow was not lawfully married to Sledd, and, thus, she could not seek workmen's compensation for his death. This Court disagreed and held that pursuant to *W.Va.Code*, 48–2–1, as amended in 1931, the widow was lawfully married to Sledd in the absence of a judicial determination to the contrary.

This Court in *Sledd* stated that an attack upon a bigamous marriage must be made in a court of competent jurisdiction and not before administrative officers such as those concerned with workmen's compensation claims. Specifically, this Court indicated that an annulment proceeding is a function of a court where opportunity may

---

7. The appellant married the appellee in Boyd County, Kentucky, on October 5, 1961. Kentucky statutory law in effect at the time of that marriage provided, as does present Kentucky statutory law, that marriage is "prohibited and void.... Where there is a husband or wife living, from whom the person marrying has not been divorced...." 1969 Ky.Acts, ch. 8, sec. 1; *Ky.Rev.Stat.* § 402.020 (1982). In *Hurley v. Hurley*, 298 Ky. 178, 182 S.W.2d 652 (1944), the court stated as follows: "KRS 402.020 ... provides a marriage is void where there is a husband or wife living from whom the person marrying has not been divorced." 298 Ky. at 179–80; 182 S.W.2d at 653. The record in this action does not fully describe the relationship of the appellant and the appellee in Kentucky.

However, there is no dispute that the appellant and the appellee were married in Kentucky.

8. That a court of record speaks only through its records or orders is the general rule. Compare, however, syllabus point 3 of *State ex rel. Scott v. Boles*, 150 W.Va. 453, 147 S.E.2d 486 (1966), where this Court held with respect to a criminal habeas corpus proceeding:

It will be presumed, where the record is silent, that a court of competent jurisdiction performed its duties in all respects as required by law. There is, however, an exception with regard to this presumption relating to the right to the assistance of counsel which is a fundamental constitutional right provided in both the State and Federal Constitutions.

be given for a hearing and the making of a judicial record. 111 W.Va. at 512, 163 S.E. at 13.

In *Sledd* this Court noted that, although bigamous marriages were void *ab initio* at common law and under early Virginia statutory law, bigamous marriages become voidable in West Virginia pursuant to statute, i.e., *W.Va.Code*, 48-2-1. As this Court stated:

At common law a disability to contract a marriage, such as having a lawful living husband or wife, rendered a subsequent marriage absolutely void *ab initio*, and it was good for no legal purpose.... Our statute, incorporated in the Code of 1868, radically changed the common law and the law of Virginia, and made such bigamous marriages 'void from the time they are so declared by a decree of divorce or nullity.' This is carried into the Code of 1931, 48-2-1, except that the proceeding is there denominated 'decree of nullity' and not 'decree of divorce or nullity' as formerly. Under our statute, therefore, such marriages are not void *ab initio*, but become void only by judicial determination.

The general rule is that a voidable marriage is regarded as practically valid until its nullity is declared by a court of competent jurisdiction within the lifetime of the parties. 18 Ruling Case Law, p. 690. Of course an individual may be convicted of the crime of bigamy though there has been no decree of annulment. What effect such conviction would have upon the claim of the guilty party for compensation need not now be considered.

111 W.Va. at 510-511, 163 S.E. at 12-13.

In *Picarella v. Picarella*, 20 Md.App. 499, 316 A.2d 826 (1974), a 16 year old male married an 18 year old female in violation of a Maryland statute concerning the age of consent to marry. The court held the marriage to be valid because, *inter alia*, the marriage had not been procured by fraudulent conduct sufficient to justify an annulment.

In *Picarella*, the court referred to the fact that in Maryland an annulment of a marriage could be obtained by way of a judgment of conviction in a criminal court for the offense of bigamy. Such an annulment, however, is authorized by Rule S76 of the Maryland Rules of Procedure. Rule S76 provides as follows: [9]

When a court shall convict one or both of the spouses of bigamy or of marrying within any prohibited degree, the judgment of conviction shall serve as an annulment of the unlawful marriage, provided that there shall be recorded at the instance of any interested person on the records of a court of equity of the same county, a complete transcript of the docket entries in the criminal proceedings leading to said judgment of conviction.

Unlike the facts in *Picarella* there is no rule or statute in West Virginia which provides that a bigamy conviction shall serve as an annulment of the unlawful marriage. Yet, to complete such an annulment under the rule in *Picarella*, the criminal proceedings concerning the bigamy conviction were required to be reflected upon the records of a court of equity. The comparable provision in West Virginia is *W.Va. Code*, 48-2-1 [1935] which provides that bigamous marriages are void "from the time they are so declared by a decree of nullity." No such decree was entered annulling or nullifying the appellant's marriage to Vance Bernard Pauley prior to her marriage to the appellee.[10]

---

**9.** In *Picarella, supra,* the court stated as follows concerning Rule S76 of the Maryland Rules of Procedure: "This was formerly Code, Art. 62, § 16, which was repealed by Acts 1962, ch. 36, § 1.... The Court of Appeals has constitutional power to make rules which have the force of law until rescinded, changed or modified by the Court or otherwise by law." 20 Md.App. at 505 n. 6, 316 A.2d at 830 n. 6.

**10.** The appellant was not a party to the bigamy prosecution between the State of West Virginia and Vance Bernard Pauley in 1952. The record in the action before this Court indicates that the Intermediate Court entered two orders in 1952 concerning Pauley's prosecution for bigamy.

First, by order entered on April 29, 1952, the Intermediate Court indicated that Pauley entered a plea of guilty to "Indictment for Felony (Bigamy) No. 255." No reference to the appellant was made in that order.

Second, by order entered on May 15, 1952, Pauley was sentenced by the Intermediate Court

■ We hold that pursuant to *W.Va. Code*, 48–2–1 [1935], bigamous marriages are "void from the time they are so declared by a decree of nullity." To obtain an annulment of a bigamous marriage, an order or decree must be entered in a court of competent jurisdiction declaring the nullity. Orders merely setting forth the conviction and sentence of a defendant for the felony offense of bigamy under *W.Va. Code*, 61–8–1 [1931], are not sufficient standing alone to constitute an annulment of a bigamous marriage.[11]

■ This Court is further of the opinion that the appellant is not entitled to an order or decree to be entered *nunc pro tunc* annulling her 1950 marriage to Pauley. Neither the appellant nor Pauley instituted proceedings in any court to annul their marriage prior to the appellant's marriage to the appellee. Nor did mistake or judicial delay prevent such an annulment from being ordered or decreed. The facts in this

action do not permit the appellant to retroactively annul her marriage to Pauley for the purpose of validating her marriage to the appellee.

■ On the other hand, we find no merit in the contention of the appellee that the Circuit Court of Kanawha County lacked jurisdiction to award the appellant temporary support from the appellee pending the appeal to this Court. Such temporary support pending appeal is authorized by *W.Va. Code*, 48–2–13 [1977]. That statute provides, in part, as follows:

> The court may, at any time after commencement of the action and reasonable notice to the other party, make any order that may be proper to compel either party to pay any sum necessary for the maintenance of the other party and to enable him or her to carry on or defend the action in the trial court and on appeal should one be taken....

to a penitentiary term of one to five years. No reference to the appellant was made in that order. That order stated, in part, as follows:

WVA 303

Vance Bernard Pauley, who stands convicted of Felony, was this day set to the bar in the custody of the Sheriff, and thereupon the Court fixes his punishment to confinement in the Penitentiary of this State for an indeterminate term of not less than one year or more than five years, with credit for time spent in Jail awaiting trial and conviction, which sentence to begin on the 2nd day of April, 1952.

Thereupon it was demanded of the said Vance Bernard Pauley if anything he had or knew to say why the Court should not now proceed to pronounce the sentence of the law against him, and nothing being offered or alleged in delay of judgment, it is considered by the Court that the defendant, Vance Bernard Pauley, be confined in the Penitentiary of this State for an indeterminate term of not less than one year or more than five years, and that the proper officer do, as soon as practicable, remove and safely convey the said Vance Bernard Pauley from the Jail of this County to the Penitentiary of this State, there to be kept imprisoned and treated in the manner prescribed by law.

Whereupon the prisoner was remanded to Jail.

Neither the April 29, 1952, order nor the May 15, 1952, order of the Intermediate Court at-

tempted to terminate the marriage between the appellant and Vance Bernard Pauley.

11. It should be noted that *W.Va.Code*, 61–8–2 [1931], implies that the Intermediate Court of Kanawha County in 1952 had jurisdiction, by sentencing order, to declare void the marriage between the appellant and Vance Bernard Pauley. That statute provides as follows:

> The preceding section [§ 61–8–1] shall not extend to a person whose former husband or wife has been continuously absent from such person for seven years next before the marriage of such person to another, and shall not have been known by such person to be living within that time; nor to a person who shall, at the time of the subsequent marriage, have been divorced from the bond of the former marriage, and the term fixed by the decree of the court granting the divorce, in which the parties may not remarry save to each other, shall have elapsed, or whose former marriage shall, at that time, have been declared void by the sentence of a court of competent jurisdiction.

Moreover, in addition to its criminal jurisdiction, 1907 Acts W.Va. Legislature, ch. 25, sec. 2, conferred limited civil jurisdiction upon the Intermediate Court of Kanawha County.

However, this Court does not reach the issue of whether the Intermediate Court of Kanawha County had jurisdiction to grant an annulment of a bigamous marriage, inasmuch as the Intermediate Court did not enter an order or decree declaring an annulment of the marriage between the appellant and Vance Bernard Pauley.

 As its procedural history indicates, this action did not involve annulment alone. The appellant instituted this action to obtain separate maintenance, pursuant to *W. Va. Code*, 48–2–28 [1969], from the appellee. In response, the appellee sought a divorce from the appellant in the alternative to annulment. The provisions of *W. Va. Code*, 48–2–13 [1977], concerning maintenance *pendente lite* have been held by this Court to apply to actions for separate maintenance.[12] As this Court held in syllabus point 1 in *Thacker v. Ferguson*, 127 W.Va. 177, 32 S.E.2d 47 (1944): "In a suit in equity by a wife for separate maintenance, under Section 29 of Chapter 35, Acts of the Legislature, 1935, the requirements of Code, 48–2–13, apply as to allowances to enable her to carry on her suit in the trial court, and upon appeal should one be taken." This Court is of the opinion that the circuit court acted within its discretion in awarding to the appellant temporary support pending appeal to this Court.

Upon all of the above, this Court is of the opinion that the circuit court was correct in concluding that the appellant's marriage to the appellee was void pursuant to Kentucky law. The basis of that conclusion was the appellant's voidable marriage to Vance Bernard Pauley which, prior to the appellant's marriage to the appellee, was never annulled or declared a nullity pursuant to *W. Va. Code*, 48–2–1 [1935], and *W. Va. Code*, 48–2–2 [1931]. Therefore, the appellant cannot maintain an action for separate maintenance against the appellee, although she was properly awarded maintenance *pendente lite* pursuant to *W. Va. Code*, 48–2–13 [1977], including temporary support pending appeal.

We recognize that to the appellant our affirmation of the conclusions of the circuit court seems harsh. However, the facts in this action are unusual, and we are bound to resolve this action consistent with applicable principles of law. We find those principles to be sound and well settled.

The final order of the Circuit Court of Kanawha County, entered on October 23, 1981, is hereby affirmed.

Affirmed.

12. *W. Va. Code*, 48–2–28 [1969], concerning separate maintenance, provided, in part, as follows: "[D]uring the pendency of the action the court shall have the same powers to make such orders as are provided for actions for divorce by section thirteen [§ 48–2–13] of this article insofar as the same are applicable on behalf of the wife."