# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**December 6, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**NOAH S.,**
**Petitioner Below, Petitioner**

**v.) No. 24-ICA-133**     (Fam. Ct. Wood Cnty. Case No. FC-54-2021-D-6)

**TAYLOR H.,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Noah S.[1] appeals the Family Court of Wood County's February 26, 2024, final custody order denying his request for a 50-50 custodial allocation. Respondent Taylor H. responded in favor of the family court's decision.[2] Noah S. filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision, but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21 of the Rules of Appellate Procedure for resolution in a memorandum decision. For the reasons set forth below, the family court's decision is vacated and remanded with directions as set forth herein.

Noah S. ("Father") and Taylor H. ("Mother") were never married but share one child, N.H., born in 2020. Events leading to this appeal began when Father filed a petition for the allocation of custody and the establishment of child support on January 7, 2021, followed by a proposed parenting plan requesting a 50-50 custodial allocation on October 12, 2021. A preliminary hearing was held on October 18, 2021. At that hearing, paternity was established, and Mother was designated as the primary residential parent. Father was granted two hours of parenting time each week for four weeks and three hours each week thereafter. By agreement of the parties, Father was also ordered not to consume alcohol during his parenting time or within twenty-four hours beforehand.

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Noah S. is represented by Justin M. Raber, Esq. Taylor H. is represented by George Y. Chandler, II., Esq.

Another hearing was held on February 28, 2022, which resulted in Father's parenting time being increased to three hours every Tuesday and Thursday afternoon. A status hearing was held on November 28, 2022. The order from that hearing was entered on December 9, 2022, and granted Father additional phased-in parenting time as follows: (1) beginning December 10, 2022, every other weekend on Saturday and Sunday from 10:00 a.m. to 6:00 p.m.; (2) beginning February 4, 2023, every other weekend from 2:00 p.m. on Saturday to 2:00 p.m. on Sunday; and (3) beginning November 30, 2023, the addition of Wednesday evenings from 3:00 p.m. to 6:00 p.m.

The final hearing was held on November 27, 2023, during which Father again requested a 50-50 parenting schedule. Mother, in contrast, requested that Father receive parenting time every other weekend from Friday through Sunday and three hours each Wednesday. The family court made the following findings of fact and conclusions of law, among others:

1. Father had two minor children from other relationships, then ages fourteen and ten, with whom he had weekly parenting time, and that he preferred to have parenting time with N.H. while his other children were present.
2. Mother had primary custodial responsibility for a six-year-old child from a prior marriage, with whom N.H. shared a close bond.
3. Mother was a full-time stay-at-home mother to both of her children and was a hands-on parent who arranged a wide variety of activities for her children to participate in together.
4. Mother rarely used outside childcare.
5. Father worked mostly from home Monday through Friday from 7:00 a.m. to 3:30 p.m.; although he is unable to care for the child during that time, the paternal grandmother would be available to care for N.H.
6. Paternal grandmother has provided substantial caretaking functions for Father's other children.
7. Father's work schedule would cause the child to be in the care of a third party repeatedly, rather than with Mother, who is almost always available.
8. Mother testified that Father was a binge drinker; Father admitted that, on occasion, he drank until he passed out.
9. The paternal grandmother occasionally drove Father to play golf because Father drank in excess.
10. Father testified that he does not drink around the children.
11. Father's alcohol consumption adversely affected his parenting ability and threatened N.H.'s well-being.
12. It is in N.H.'s best interest for Father not to consume alcohol before or during his parenting time.

13. The adoption of Father's requested 50-50 parenting plan would require the child to be separated from her six-year-old brother.
14. Mother's proposed parenting plan is in the child's best interest and would allow Father to have parenting time with N.H. during his other children's parenting time.
15. The following limiting factors rebut the 50-50 custody allocation presumption: (1) the child would be separated from her brother; (2) the child would repeatedly be placed in the care of a third party for childcare; and (3) Father's occasional, excessive consumption of alcohol impairs his ability to parent the child.

The final order was entered on February 26, 2024. It is from that order that Father now appeals. For these matters, we use the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Father asserts that the family court erred by failing to grant him a 50-50 custodial allocation because Mother failed to rebut the presumption contained in West Virginia Code § 48-9-206 (2022), and that the family court's order failed to include sufficient findings of fact and conclusions of law. We agree that the family court failed to include sufficient findings of facts and conclusions of law.

West Virginia Code § 48-9-102a (2022) provides that it is rebuttably presumed "that equal (50-50) custodial allocation is in the best interest of the child." West Virginia Code § 48-9-206(a) provides, "[u]nless otherwise resolved by agreement of the parents [. . .] or unless harmful to the child, the court shall allocate custodial responsibility so that, except to the extent required under § 48-9-209 of this code, the custodial time the child spends with each parent shall be equal (50-50)." West Virginia Code § 48-9-209(f) (2022) clarifies that, "[i]n determining whether the presumption for an equal (50-50) allocation of physical custody has been rebutted, a court shall consider all relevant factors including any of the following:" Section (f) then provides a non-exclusive list of factors, which includes instances such as whether the child will be separated from his or her siblings, whether a 50-50 schedule would be impractical due to each parent's daily schedule, and whether a parent is addicted to controlled substances or alcohol. Here, the family court touched on

3

those three limiting factors but failed to address the language of West Virginia Code § 48-9-209(f).

Regarding sibling separation, West Virginia Code § 48-9-209(f)(2)(D) states that a court shall consider whether a child "[w]ill be separated from his or her siblings or the arrangement would otherwise disrupt the child's opportunities to bond with his or her siblings[.]" In this case, the family court found that a 50-50 arrangement would separate N.H. from her half-brother ("C.B.") on Mother's side, as N.H. had developed a close bond with C.B. because the two children had resided together since N.H.'s birth. Father argues on appeal that N.H. has not had the same opportunity to bond with his other children, particularly during the first ten months of N.H.'s life when Father exercised no parenting time. In protecting N.H.'s bond with C.B., the family court inexplicably prioritized the bond with her half-sibling on Mother's side over the half-siblings on Father's side without providing an analysis of § 48-9-209(f)(D).

With regard to childcare during Father's workday parenting time, West Virginia Code § 48-9-209(f)(3)(E) states that a court must consider whether a parent "[r]epeatedly causes the child or children to be in the care of a third party rather than the other parent when he or she is available[.]" This code section is capable of being read at least two different ways. We think the best reading is that the statute contemplates a parent repeatedly causing a child to be placed in the care of a third party even though that parent is available. The family court reasoned that Father's work schedule would require N.H. to be in the care of her paternal grandmother while Father worked, even though Mother was a stay-at-home parent and able to care for the child during normal work hours. However, in this case, Father was not "available" because he was working, and, therefore, this limiting factor does not appear to be applicable under the facts as we understand them. Because the family court's order is unclear about which specific limiting factors were applied, and because this particular limiting factor may have been applied incorrectly, this Court cannot provide a thorough appellate review.

Regarding Father's problematic alcohol consumption, West Virginia Code § 48-9-209(f)(4)(D) states that a court must consider whether a parent "[i]s addicted to a controlled substance or alcohol." Here, the family court held that the 50-50 presumption was rebutted because Father's binge drinking adversely affected his parenting ability and threatened N.H.'s well-being. The family court ordered that Father abstain from consuming alcohol while exercising his parenting time and within a twenty-four-hour period prior to exercising it.

In *Kane M. v. Miranda M.*, No. 23-ICA-479, 2024 WL 4511450 (W. Va. Ct. App. 2024), this Court held that a family court's finding that a parent's prior alcohol problem rebutted the 50-50 presumption was insufficient because the alcohol abuse was not a current problem and the family court specifically found that "[Petitioner] has taken significant steps to rectify the substance abuse problem and based on the evidence it is not

currently a problem." We held that the family court did not find that the Father "was addicted to alcohol as necessary to fall within the parameters of West Virginia Code § 48-9-209(f)(4)(D)" and remanded the case back to the family court with instructions to enter an order with sufficient findings of fact and conclusions of law to support deviating from 50-50. *Id*. at \*4. We emphasized that when alcohol or substance abuse is determined by the family court to be a limiting factor, the family court must include specific findings of fact that explain how the alcohol or substance addiction is a current issue. *See* W. Va. Code § 48-9-206(d) ("The court's order determining allocation of custodial responsibility shall be in writing and include specific findings of fact and conclusions of law supporting the determination.").

Similar to *Kane M.*, the family court in this case did not make specific findings of fact and conclusions of law to support its finding that Father is presently "addicted" to alcohol pursuant to West Virginia Code § 48-9-209(f)(4)(D). Although the family court found that Father's occasional, excessive consumption of alcoholic beverages impairs his ability to parent N.H., the family court failed to explain (1) how Father's consumption of alcohol is a current issue that would categorize Father as "addicted" to alcohol and (2) how Father's binge drinking will adversely affect N.H. when he has been ordered to not drink around N.H. or within 24 hours before parenting time. As in *Kane*, the Order failed to cite to § 48-9-209(f)(4)(D) or engage in any meaningful way with the statute to indicate, for the purposes of appellate review, how Father's drinking could be labeled as an addiction pursuant to the code or should be considered an "other factor" that is properly justified to rebut the 50-50 presumption.

Father also argues on appeal that the final order contradicts what was stated during the hearing. This argument lacks merit. Rule 22(b) of the West Virginia Rules of Practice and Procedure for Family Court states:

> An attorney assigned to prepare an order or proposed findings shall deliver the order or findings to the court no later than ten days after the conclusion of the hearing giving rise to the order or findings. Within the same time period the attorney shall send all parties copies of the draft order or findings together with a notice which informs the recipients to send written objections within five days to the court and all parties. If no objections are received, the court shall enter the order and findings no later than three days following the conclusion of the objection period.

Upon our review of the record, we conclude that Father had the opportunity to file Rule 22(b) objections but failed to do so. Further, the Supreme Court of Appeals of West Virginia has consistently held that a court's written order controls. *See Legg v. Felinton*, 219 W. Va. 478, 637 S.E.2d 576 (2006) (holding that if a court's written order conflicts with an oral statement from the bench, the written order controls). *See also Harvey v.*

*Harvey*, 171 W. Va. 237, 241, 298 S.E.2d 467, 471 (1982) (stating that a court of record speaks only through its records or orders).

For the foregoing reasons, we vacate the family court's February 26, 2024, order and remand this case with directions to issue a new order with a thorough analysis regarding each of the three limiting factors discussed above. The final order is hereby converted to a temporary custodial allocation order until the entry of a new final order consistent with this decision is issued by the family court.

Vacated, and Remanded, with Directions.

**ISSUED:** December 6, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

6